IN THE MATTER OF LEONARD KINGSLEY, Respondent.
No. 138, 2008, Board Case No. 31, 2007.
Supreme Court of Delaware.
Submitted: May 6, 2008.
Decided: June 4, 2008.
Before STEELE, Chief Justice, JACOBS, and RIDGELY, Justices.

ORDER
HENRY DUPONT RIDGELY Justice.
This 4th day of June 2008, it appears to the Court that:
(1) This is a disciplinary proceeding filed by the Office of Disciplinary Counsel ("ODC") against Leonard Kingsley ("Kingsley" or "Respondent"). On March 14, 2008, the Board on Professional Responsibility ("Board") filed a Report (copy attached) finding professional misconduct and recommending that Respondent be disbarred. Respondent filed an objection to the Board's recommendation, seeking instead a five-year suspension, with conditions. As explained more fully herein, the ODC supports the Report and recommendation of the Board imposing disbarment, but filed limited objections to the limitations imposed on admission pro hac vice, temporary practice of law, and application for admission to the Delaware Bar. The ODC also objected to the language in page eight of the Report, which characterized as "testimony" the colloquy between counsel for the ODC and the Board during the legal argument portion of the hearing.
(2) Respondent is not a member of the Bar of the Supreme Court of Delaware. He is a member of the Bars of the Commonwealth of Pennsylvania and the State of New Jersey. From February 27, 2006 to June 30, 2006, Respondent was an employee of a public accountant, Ralph V. Estep, and would prepare wills, trusts, powers of attorney, and deeds for Estep's Delaware clients. He would also meet with Estep's Delaware clients to discuss estate planning matters. Estep, however, was not a Delaware attorney and was not, at any relevant time, authorized to practice law in the State of Delaware or in any other state or jurisdiction. The ODC filed a complaint against Estep for the unauthorized practice of law and Estep stipulated to the entry of a Cease and Desist Order with he ODC on October 30, 2006 (the "Estep Cease and Desist Order").[1]
(3) In June 2006, the ODC advised Respondent that "his activities with respect to rendering legal advice on Delaware law were in violation of the Rules." Thereafter, Respondent and Estep modified their working arrangement. Respondent formed his own legal practice in West Chester, Pennsylvania, and Estep would retain Respondent as outside counsel, paying him a retainer of $8,000 per month. Respondent continued to draft wills, trusts, powers of attorney, and deeds for Estep's Delaware clients, and on occasion, meet with them to discuss estate planning matters as he previously had done.[2] The Board found that the record did not reflect that Respondent ever monitored this arrangement to ensure that Delaware counsel met with the clients to confirm that the documents Respondent prepared complied with the clients' wishes.
(4) Despite the Estep Cease and Desist Order, Estep continued to meet with clients and had them execute documents prepared by Respondent. In August or September 2006, Respondent learned that Estep had been convicted of a felony for terroristic threatening involving a gun. Thereafter, he ceased to name Estep as a personal representative, but did not bring the problem to the attention of other clients for whom he had named Estep as the personal representative because he was merely outside counsel[3] Respondent terminated his relationship with Estep by September or October 2007.
(5) In August 2007, the ODC filed a Petition for Discipline ("Petition") against Respondent, alleging that he had violated the Delaware Lawyers' Rules of Professional Conduct ("Professional Conduct Rules") by practicing law in Delaware by drafting estate planning documents for more than seventy-five Delaware residents and assisting Estep in giving advice to Delaware residents on estate planning matters (Counts The ODC also alleged that: Respondent engaged in the unauthorized practice of law in violation of Rule 5.5(b)(1) by maintaining a systematic and continuous legal presence in Delaware, establishing an office in Delaware for the practice of law by identifying the location of his law practice as "The Kingsley Law Firm", 1308 Kynlyn Drive, Wilmington, Delaware, and by working and practicing law in Estep's office in Wilmington (Counts IVI); Respondent violated Rule 5.5(b)(2) by holding out to the public, through the identification in Delaware of the location of his law practice, that he was admitted to practice in Delaware (Count VII); and Respondent violated Rule 3.4(c) prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal by drafting estate planning documents, including wills, trusts and powers of attorney, and giving advice to Estep's clients in knowing violation of the Estep Cease and Desist Order (Counts VIII-IX).
(6) Respondent failed to file an answer or request an extension and the ODC requested that the allegations and charges be deemed admitted pursuant to Rule 9(d)(2) of the Delaware Lawyers' Rules of Disciplinary Procedure. Respondent did not respond to this request, and the Panel Chair of the Board advised the parties that the allegations and charges would be deemed admitted pursuant to Procedural Rule 9(d)(2), with the appropriate disciplinary sanction being the sole remaining issue to be determined at the hearing.
(7) The day before the hearing was scheduled, Respondent asserted that the Board lacked jurisdiction over him. Following briefing on this issue, a Panel of the Board found that they did have subject matter jurisdiction to resolve the allegations asserted in the Petition and that Respondent's failure to respond in a timely way to the ODC's Petition waived his defense of lack of personal jurisdiction. The Panel also determined that the allegations and charges in the Petition were deemed admitted.
(8) Following the sanctions hearing, the Board concluded Respondent "violated duties to the public, to clients, to the legal system[,] and to the profession... by preparing wills, trusts, deeds and other estate planning documents for citizens of Delaware, many of whom he never met, even though he was not licensed to practice in Delaware." Regarding intent, the Board found that Respondent's actions after the ODC contacted him in June "presents a close question of whether his conduct went beyond negligence to a knowing violation" of the Professional Conduct Rules. The Board found that the ODC failed to prove by clear and convincing evidence that Respondent knowingly violated Rules 5.5(a) or 5.5(b)(1) in Counts I-IV and VI or Rule 5.5(b)(2) in Counts V and VII. With regard to Counts VIII and IX, however, the Board found that Respondent's violations of the Estep Cease and Desist Order after October 30, 2006 were knowing because the allegations in Counts VIII and IX were deemed admitted. The Board also found that Respondent's actions of naming Estep and his firm as the trustee of trusts to which his clients transferred property caused "serious harm" to the clients for which he drafted estate planning documents.[4] Thereafter, the Board recommended disbarment because Respondent knowingly violated a prior order to cease and desist.[5]
(9) Respondent, in his objections to the Board's recommendations, noted that he "is not unwilling to accept responsibility in this case" and that he "is willing to give [the ODC] all that the office seeks, save the term `clisbarment.'"[6] The ODC supports the Board's recommendation of disbarment because it "will deter non-Delaware lawyers from engaging in the unauthorized practice of law in Delaware and from violating orders from this Court," but objected to the limitations imposed on admission pro hac vice, temporary practice of law, and application for admission to the Delaware Bar and also to the characterization of the colloquy between counsel for the ODC and the Board during the legal argument portion of the hearing as "testimony."
(10) This Court has the inherent and exclusive authority to discipline members of our Bar.[7] We also have the authority to discipline non-Delaware attorneys who provide legal services in this State[8] in violation of our Professional Code of Conduct.[9] While the Board's recommendations on the appropriate sanction to be imposed are helpful, they do not bind this Court:[10] "[W]hen the record establishes a lawyer's willingness to violate the terms of his suspension order, disbarment is appropriate as a prophylactic measure to prevent further misconduct by the offending individual."[11] The Board relied on In re Tonwe[12] in support of imposing disbarment. In that case, this Court disbarred a non-Delaware attorney who had practiced law in Delaware without being admitted to the Delaware Bar. In agreeing with the Board that disbarment was the appropriate sanction, we explained:
Glover was not merely suspended from practicing law in Delaware; she was never admitted to the Delaware bar and never authorized to practice here. Glover has demonstrated, by her past conduct, that she is unwilling or unable to conform to the standards governing members of this profession. In 1991, to further her legal practice, Glover committed serious federal crimes. At the same time, again to further her legal practice, Glover practiced law in Delaware without being admitted to the Delaware bar. She agreed to the entry of a Cease and Desist Order, and then disregarded it. Glover was punished for her crimes and disbarred in three jurisdictions, but as soon as she resumed her legal practice, Glover resumed her unauthorized practice of law in Delaware.[13]
(11) Rule 5.5 of the Delaware Lawyers' Rules of Professional Conduct permits out-of-state lawyers to provide legal services in Delaware under four exceptions set forth in Rule 5.5(c)[14] and two exceptions in Rule 5.5(d).[15] Apart from these exceptions, Rule 5.5 prohibits a lawyer who is not admitted to practice in Delaware from establishing an office or having a "systematic and continuous presence" in Delaware for the practice of law[16] An out-of-state lawyer is also prohibited from holding out to the public or otherwise representing that he is admitted to practice law in Delaware.[17]
(12) After carefully considering Respondent's violations, the findings of the Board, and our prior precedents, we find that Kingsley did establish a "systematic and continuous presence" in Delaware for the practice of law in violation of the Professional Conduct Rules and his duties owed as a professional. Kingsley was on notice that his activities with respect to rendering legal advice on Delaware law were in violation of the Rules. After he established a practice in West Chester, Pennsylvania, he continued to practice law in Delaware. Estep retained Kingsley and paid a regular retainer for Kingsley to draft wills, trusts, powers of attorney, and deeds for Estep's Delaware clients, and on occasion, meet with them to discuss estate planning matters as he previously had done.[18]
(13) We agree with the Board that Kingsley's violations of duties owed as a professional were serious enough to warrant the sanction of disbarment. The ABA Standards for Imposing Lawyer Sanctions recommend that, absent aggravating or mitigating circumstances, Isluspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty as a professional and causes injury or potential injury to a client, the public, or the legal system."[19] "Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system."[20] Kingsley's knowing violation of the Estep Cease and Desist Order violated his ethical duties and seriously undermined the legal system. Disbarment in the context of an attorney not admitted in Delaware means "the unconditional exclusion from the admission to or the exercise of any privilege to practice law in this State."[21] Accordingly, we conclude that disbarment is appropriate.[22]
NOW, THEREFORE, IT IS HEREBY ORDERED that:
(1) The Respondent is disbarred and prohibited and suspended from providing advice to any Delaware clients on matters of Delaware law, including without limitation drafting wills, powers of attorney, deeds of trust, and other estate planning documents for Delaware clients under Delaware law;
(2) Within five business days of receipt of this order, Respondent shall request in writing that the Philadelphia Estate Planning Council no longer list his law firm address in Delaware and refrain in all respects from identifying his law firm address as being in Delaware;
(3) The contents of the Board's report shall be made public;
(4) The Respondent shall pay the costs of these disciplinary proceedings, pursuant to Rule 27 of the Delaware Lawyers' Rules of Disciplinary Procedure, promptly upon presentation of a statement of costs by the ODC;
(5) The Respondent shall fully cooperate with the ODC in its efforts to monitor his compliance with this Order;
(6) This Order shall be disseminated by the ODC in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.
 BOARD ON PROFESSIONAL RESPONSIBILITY
 OF THE
 SUPREME COURT OF DELAWARE
IN THE MATTER OF : CONFIDENTIAL
LEONARD KINGSLEY, :
 : Board Case No. 31, 2007
RESPONDENT. :
Before Lewis H. Lazarus, Esq., Maxine Rosenthal, and Karen L. Valihura, Esq. Patricia Bartley Schwartz, Esq. for Petitioner, OFFICE OF DISCIPLINARY COUNSEL Leonard Kingsley (Pro Se) for Respondent, LEONARD KINGSLEY, ESQ.
Dated: March 14, 2008

OPINION OF THE'BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT QF THE STATE OF DELAWARE

INTRODUCTION
This is a disciplinary proceeding filed by the Office of Disciplinary Counsel ("ODC" or "Petitioner") against Leonard Kingsley ("Respondent:" or "Kingsley"). This proceeding arises out of a complaint filed by the ODC against a public accountant, Ralph V. Estep ("Estep") for the unauthorized practice of law. Estep stipulated to the entry of a Cease and Desist Order with the ODC on October 30, 2006. Among other things, he agreed that the preparation of estate planning documents by a non-Delaware lawyer constituted the unauthorized practice of law. Because it appeared that he violated the Order by preparing documents for four sets of clients between October 30 and November 13, 2006, the ODC brought contempt charges. The Board on the Unauthorized Practice of Law ("UPL Board") held a hearing and on May 25, 2007 found Estep in contempt. Estep appealed and the Supreme Court affirmed the UPL Board's findings in a per curiam opinion on August 15, 2007. In the Matter of Estep, 933 A.2d 763 (Del. 2007) (en bane) (Per curiam).
The present matter was brought by the ODC against Kingsley for his role in Estep's scheme. Kingsley did not timely respond to the allegations in the ODC's petition. He did, however, raise a threshold issue of whether the Board of Professional Responsibility ("Board") has subject matter jurisdiction over a non-Delaware lawyer not admitted in Delaware, The Board found that it did have subject matter jurisdiction and conducted a hearing on sanctions. This is the opinion of the Board on subject matter jurisdiction and the appropriate sanctions for Kingsley's admitted conduct.

BACKGROUND

A. Petitioner's Allegations
This matter came before the Board by the filing by the ODC on August 8, 2007 of a Petition for Discipline ("the Petition") against Kingsley. The ODC alleges that Respondent, an attorney not admitted to practice in Delaware, violated the Delaware Lawyers' Rules of Professional Conduct ("Professional Conduct Rules") by practicing law in Delaware by drafting estate planning documents for more than seventy-five (75) Delaware residents and assisting Estep in giving advice to Delaware residents on estate planning matters. Petition, Counts I-111. The ODC alleges that this conduct violates Rule 5.5(a) which provides that "A lawyer shall not practice law in a jurisdiction in violation of regulation of the legal profession or assist another individual in doing so." Id.
The ODC further alleges that Respondent engaged in the unauthorized practice of law in violation of Rule 5.5(b) (1) by maintaining a systematic and continuous legal presence in Delaware, establishing an office in Delaware for the practice of law by identifying the location of his law practice as "The Kingsley Law Firm", 1308 Kynlyn Drive, Wilmington, Delaware, and by working and practicing law in Estep's office at 508 Main Street in Wilmington, Delaware. Petition, Counts IV-VI.
Petitioner also alleges that Respondent violated Rule 5.5(b) (2) by holding out to the public through the identification in Delaware of the location of his law practice that he was admitted to practice law in Delaware. Petition, Count VII.
Finally, the ODC alleges that Respondent violated rule 3.4(c) prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal by drafting estate planning documents, including wills, trusts and powers of attorney, and giving advice to Estep's clients in knowing violation of a Cease and Desist Order against Estep entered by the Supreme Court of the State of Delaware dated October 30, 2006. Petition, Counts VIII-IX.

B. Respondent's Failure to Answer/ Panel Chair Deems Admitted the Allegations and Charges in the Petition
The Petition having been served on August 12, 2007, Rule 9(d) (2) of the Delaware Lawyers' Rules of Disciplinary Procedure ("Procedural Rules") required an answer to be filed within 20 days or by September 4, 2007. Respondent failed to file an answer or request an extension. On September 6, 2007, the ODC requested the Panel Chair of the board of Professional Responsibility to find that the allegations and charges in the Petition be deemed admitted pursuant to Procedural Rule 9(d)(2). That Procedural Rule provides in pertinent part that "In the event the respondent fails to serve an answer within the prescribed time, all of the allegations and charges in the petition shall be deemed admitted, such that the sole remaining issue to be determined by the board shall be the appropriate disciplinary sanction." Respondent did not respond to this request. On September 19, 2007, the Panel Chair advised the parties that the allegations and charges in the Petition would be deemed admitted pursuant to Procedural Rule 9(d)(2) with the appropriate disciplinary sanction the sole remaining issue to be determined at the hearing scheduled for September 26, 2007.

C. Respondent in Advance of Hearing Contends that Board of Professional Responsibility Lacks Jurisdiction
By letter dated September 25, 2007, Respondent asserted that the Board of Professional Responsibility lacks jurisdiction to adjudicate the allegations in the Petition. Respondent contended that Rule 5 of the Procedural Rules grants jurisdiction to the Board over (1) Persons admitted to practice; (2) Former Judges; and (3) Incumbent Judges. As he was in none of these categories, Respondent asserted the Board lacked jurisdiction. On September 26, 2007, the Board convened and, in light of the assertion of potential lack of jurisdiction, requested the parties to provide briefing on the jurisdiction issue and adjourned the hearing.

D. Analysis
The Panel has determined that the Board has subject matter jurisdiction to resolve the allegations asserted in ODC's Petition. Further, because Respondent failed to respond to the Petition in a timely way, the Panel finds that he has waived his defense of lack of personal jurisdiction and that the allegations and charges of the Petition are deemed admitted. The hearing reconvened on December 19, 2007 for the purpose of determining the appropriate sanctions. The Panel first addresses the jurisdiction issues and then turns to the sanctions.

1. The Board has subject matter jurisdiction to resolve claims of violation of the Delaware Lawyers' Rules of Professional Conduct
Respondent grounds his argument upon the failure of Rule 5 of the Procedural Rules expressly to authorize jurisdiction over a lawyer not admitted to practice in Delaware. The Panel acknowledges that the language of Rule 5 does not expressly address jurisdiction over a lawyer who practices in Delaware but is not admitted in Delaware. However, following the adoption of the Procedural Rules, the Delaware Supreme Court promulgated Rule 8.5(a) of the Professional Conduct Rules effective July 1, 2003. That rule provides in pertinent part that "A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction." The question thus becomes whether the Board is empowered as an arm of the Delaware Supreme Court to adjudicate allegations by the ODC that a lawyer not admitted in Delaware has violated one or more of the Professional Conduct Rules.
The Panel finds that the Delaware Supreme Court answered this question in the affirmative last year in In the Matter of Valerie Glover Tonwe, 929 A.2d 774 (Del. 2007) (Per curiam). Tonwe involved a petition by the ODC alleging that Ms. Glover Tonwe ("Glover") had violated Rule 3.4(c) of the Professional Conduct Rules. Like Respondent here, Glover was not admitted to practice in Delaware. In rejecting an argument by Glover that Rule 19 of the Rules of the Board on the Unauthorized Practice of Law provided the sole basis for the ODC to institute a disciplinary proceeding to prosecute an alleged violation of a Professional Conduct Rule, the Supreme Court held:
We agree with Glover, that the ODC could have relied upon UPL Rule 19 to seek enforcement of the Cease and Desist Order. But, in this case, the same conduct that would have supported a finding of contempt under UPL Rule 19, also would constitute knowing disobedience of a court order in violation of Rule 3.4(c). The ODC, in a proper exercise of its discretion, elected to proceed under the lawyer disciplinary rules.
Id. at 778 (emphasis supplied).
As here, the ODC alleged violations of the Professional Conduct Rules by a lawyer not admitted to practice in Delaware. As here, the respondent contended that the ODC lacked discretion to proceed with a disciplinary proceeding before the Board but could only proceed before the Board on the Unauthorized Practice of Law. And as the Delaware Supreme Court found in Tonwe that the ODC in the exercise of its discretion could elect to proceed under the lawyer disciplinary rules, the Panel finds that the Delaware Supreme Court would sanction the same result here. Accordingly, the Panel holds that it has subject matter jurisdiction to adjudicate the Petition.

2. Respondent Waived Any Argumen he Board ks Personal Jurisdiction over His Conduct
Procedural Rule 15(b) provides that "[ejxcept as otherwise provided in these Rules, the Rules of Civil Procedure for the Superior Court of the State of Delaware shall apply to the extent practicable" to disciplinary proceedings. Superior Court Rule 12(h) provides that a "defense of lack of jurisdiction over the person ... is waived ... if it is neither made by motion under this rule nor included in a responsive pleading." As noted above, Procedural Rule 9(d)(2) requires an answer to a petition within 20 days after service of the petition, absent an extension. As Respondent failed to answer the petition or otherwise move within twenty days of its service, the Panel finds that Respondent has waived the defense of lack of personal jurisdiction. Moreover, for the reasons set forth in the Panel Chair's letter to the parties of September 19, 2007, the allegations and charges of the Petition are deemed admitted. See also In re Fountain, 913 A.2d 1180, 1181 (Del. 2006).
The sole remaining issue to be addressed is the Panel's finding of the appropriate sanction based on the evidence submitted at the hearing of December 19, 2007 to which we now turn.[1]

3. The Board Finds that the Appropriate Sanction is that Respondent be Disbarred

a. The Facts Presented at the Sanctions Hearing
At the sanctions hearing, counsel for the ODC, Patricia Bartley-Schwartz, Esq., and Kingsley were the sole participants. The ODC relied upon the following exhibits which were admitted into evidence without objection by Kingsley:
ODC 1  Receiver's First Report (January 5, 2007) to Court of Chancery in In the Matter of Estep, C.A. No. 2535-N;
ODC 2  Deposition of Leonard Kingsley (February 21, 2007) in In the Matter of Estep, C.A. No. 2535-N;
ODC 3  Partial Transcript of Hearing Before the Board on the Unauthorized of William Welsh) (Testimony of Leonard Kingsley, Esquire);
ODC 4  Delaware Supreme Court decision in In the Matter of Estep, No. 647 (August 15, 2007) (en banc) (per curiam);
ODC 5  Correspondence from Ralph V. Estep to the Justice of the Peace (May 8, 2007) and Justice of the Peace Order in Durnan Estep (May 15, 2007);
ODC 6  Philadelphia Estate Planning Council Membership Directory for Leonard Kingsley, Esquire; and
ODC 7  Admitted Facts and Admissions of Conduct Constituting the Unauthorized Practice of Law (June 6, 2006) submitted to the Board on the Unauthorized Practice of Law in In the Matter of Estep, UPL Board File 05-1.
Respondent submitted no exhibits, apart from the material in his Motion to Clarify. The Board's factual findings are based on the above exhibits, the Petition as deemed admitted, those portions of the Motion to Clarify the Board found relevant to the sanctions hearing, and the testimony at the sanctions hearing.

b. The Allegations Deemed Admitted by Respondent
Petitioner's allegations admitted by Respondent are as follows:
1. The Respondent is not and has never been a member of the Bar of the Supreme Court of Delaware.
2. The Respondent is a member of the Bars of the Commonwealth of Pennsylvania and the State of New Jersey.
3. The Supreme Court of Delaware has jurisdiction pursuant to Rule 8.5 which states that a "lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction."
4. From February 27, 2006 until June 30, 2006, the Respondent was employed by Ralph V. Estep ("Estep"), an accountant, who has an office located at 508 Main Street in Wilmington Delaware. Estep is not, and at all relevant times was not, authorized to practice law in the State of Delaware or in any other state or jurisdiction.
5. While employed by Estep, the Respondent drafted wills, trusts, powers of attorney and deeds for Estep's Delaware clients. On occasion, the Respondent met with Estep's Delaware clients to discuss estate planning matters.
6. In June 2006, the ODC advised the Respondent that his activities with respect to rendering legal advice on Delaware law were in violation of the Rules.
7. Soon, thereafter, the Respondent opened "The Kingsley Law Firm" in West Chester, Pennsylvania. The Respondent continued to draft wills trusts, powers of attorney and deeds for Estep's Delaware clients and, on occasion, would meet with Estep's Delaware clients to discuss estate planning matters.
8. The Respondent also identified 1308 Kynlyn Drive, Wilmington Delaware as an address for The Kingsley Law Firm.
9. Prior to October 30, 2006, the Respondent had drafted estate planning documents including wills, trusts, powers of attorney and deeds for more than seventy-five (75) of Estcp's Delaware clients. [names omitted]
10. On October 30, 2006, the Delaware Supreme Court ordered Estep to cease and desist immediately his unauthorized practice of law in Delaware which including drafting estate planning documents ("Cease and Desist Order"). The Cease and Desist Order is attached as Exhibit 1. Thereafter, the Respondent drafted estate planning documents for Estep's Delaware clients and, on occasion, met with Estep's Delaware clients to discuss estate planning. Those clients include but are not limited to:
Easter Burch Yolanda & William Welch Bruce Abbott Vivienne Titus

c. February 27. 2006 to June 30. 2006: Kingsley Works as an Employee of Estep
Respondent is not licensed to practice law in Delaware. He was admitted in Pennsylvania in 2003, to the Eastern District of Pennsylvania in May of 2004, and to the state and federal courts in New Jersey in December of 2006. From February 27, 2006 until June 30, 3006, Kingsley was an employee of Estep earning $85,000 annually payable in monthly installments. Estep is not an attorney. He maintained an office at 508 Main Street in Wilmington, Delaware. Estep's routine practice was to meet with clients to discuss estate planning. No Delaware attorney was present during those meetings. Estep would take notes reflecting his conversations with the clients. He then sent the notes to Kingsley. During this time, Kingsley prepared wills, trusts, powers of attorney and deeds for approximately 30 individuals and couples who resided in Delaware, based on Estep's notes.[2] He sent his draft to John Bialecki, Esq., a member of the Delaware bar for his review. Kingsley then made any changes requested by Bialecki and forwarded the completed documents to Estep who presented them to the clients.

d. June 30, 2006 to October 30, 2006: Kingsley Terminates His Employment Relationship with Estep but Does Essentially the Same Work on Retainer as Legal Counsel
On June 6, 2006, as part of the proceeding initiated by the ODC in January of 2006 against Estep for the unauthorized practice of law, Estep entered in to "Admitted Facts and Admissions of Conduct Constituting the Unauthorized Practice of Law". ODC 7. Among other things, Estep agreed that "the drafting of wills and trusts by a non-lawyer who is not authorized to practice law by the Delaware Supreme Court constitutes the unauthorized practice of law and that he engaged in the unauthorized practice of law by drafting wills and trusts." Id. at ¶ 11. Schwartz testified that as part of ODC's investigation she learned that Kingsley worked for Estep. She called him in June, 2006 and told him "You are engaging in the unauthorized practice of law. You are assisting Mr. Estep." Sanctions Hearing, Tr. at 74. She also told him "You should leave this employment. You are going to seriously jeopardize your ability to be a Delaware lawyer." Id. Kingsley acknowledges that he spoke to Schwartz, that she told him he was "on the ODC's radar," and that she told him to cease his employment with Estep but denies that she informed him that he was engaging in the unauthorized practice of law. Id. at 51. The ODC's allegation that "In June 2006, the ODC advised Respondent that his activities with respect to rendering legal advice on Delaware law were in violation of the Rules" has been deemed admitted. Petition, ¶ 6.
Following the conversation with Schwartz, Kingsley testified that he understood that ODC's primary objection to Estep's practice was that "it was unacceptable to have a Delaware attorney simply review this without their [sic] actually being face-to-face time between the Delaware attorney and the client." Id. Estep and Kingsley modified their practice in that Kingsley 1) ceased his employment with Estep, 2) formed his own legal practice with an office in West Chester, Pennsylvania, "Kingsley Law Firm, P.C.", 3) secured a retainer of $8000 per month to represent Estep, 4) continued to draft wills, trusts, powers of attorney and deeds for Estep's Delaware clients based on Estep's notes, 5) ceased meeting with Estep and any of the clients for the initial interview and 6) understood that Estep would arrange for a Delaware attorney  Bialecki through August 2006 and then McCracken after that  to be present when the clients came in to meet with Estep to sign the documents. As Kingsley testified, "my understanding of the ODC's discussions with Mr. Estep was that their problem was that no attorney was meeting face to face with the clients. And so my understanding was that we resolved that.... And so, I thought that the change in the process that Mr. Estep had put in effect where Mr. Bialecki or Mr. McCracken was present to present these documents to the client was sufficient under Delaware law." Id. at 57. Using this process, Kingsley prepared legal documents for approximately 20 individuals and couples and forwarded the documents to Estep for presentation to the Delaware clients by Estep in the presence of either Mr. Bialecki or Mr. McCracken. The record reflects no effort by Kingsley to determine whether the new arrangement was working to ensure that Delaware counsel met with the clients to ensure that the documents he prepared complied with their wishes.
Sometime in August or September of 2006, Kingsley learned that Estep had been convicted of a felony for terroristic threatening involving a gun. Tr. at 52-53. Thereafter, Kingsley ceased to name Estep as a personal representative as it is impermissible to name a convicted felon to such a role. Id. at 55. Kingsley did not bring that problem to the attention of other clients for whom Kingsley had named Estep as the personal representative. Id. Kingsley acknowledged that was a failing on his part but testified that he lacked access to the whole database as he was no longer an employee but merely outside counsel. Id. at 55-56.

e. October 30, 2006 to November 13, 2006: Estep Meets with Four More Clients Who Execute Documents Prepared by Kingsley; Kingsley Ceases Preparing Estate Planning Documents After He Learns of Cease and Desist Order Entered Against Estep
On October 30, 2006, the Delaware Supreme Court entered an order in In the Matter of Ralph Estep ("Cease and Desist Order") approving the Admitted Facts and Admissions of Conduct Constituting the Unauthorized Practice of Law to which Estep and the ODC were parties. The Order provided that Estep was "to cease and desist the unauthorized practice of law immediately." Nonetheless, Estep met with Easter Burch, Yolanda and William Welch, Bruce Abbott, and Vivienne Titus after the entry of the Cease and Desist Order and had them execute documents prepared by Kingsley between October 30 and November 13, 2006. The ODC's allegation that "by drafting estate planning documents including wills trusts and powers of attorney after October 30, 2006, [he] knowingly disobeyed the Cease and Desist Order in violation of Rule 3.4(c)" was deemed admitted by Kingsley's failure to answer. Petition, ¶ 27. The same applies to the ODC's allegation that "by giving legal advice to Estep's Delaware clients after October 30, 2006, [he] knowingly disobeyed the Cease and Desist Order in violation of Rule 3.4(c)." Id. at ¶ 29.

f. November 13, 2006 to September 30, 2007: A Court-Appointed Receiver Takes over Estep's Practice; the Board on Unauthorized Practice of Law Takes Discovery Regarding Estep, Including of Kingsley; the UPL Board Recommends Sanctions Against Estep; the ODC Brings This Action; and Kingsley Terminates Relationship with Estep
The Delaware Supreme Court appointed Peter Gordon, Esq. as receiver for Estep's practice on November 9, 2006. He collected 283 files of Estep's. He advised all clients of Estep's of the Cease and Desist Order and the finding that Estep had engaged in the unauthorized practice of law. Each client was told that he or she could meet free of charge for one hour with a member of the Delaware Bar to review their estate planning documents.
In reaction to a letter from Wachovia Bank that it intended to limit Estep's authority to manage certain trust accounts, Estep decided on Kingsley's recommendation in December of 2006 to resign as a trustee in favor of Kingsley. ODC-2 at Pages 14-19. Kingsley prepared appropriate documentation to implement this decision. Id. Kingsley testified that he received no compensation for his service as Trustee and that he was agreeable to resigning as trustee if any of the beneficiaries objected. Id. at Pages 19-20. Funds from trust accounts maintained in Delaware pursuant to trusts established for Delaware clients were moved to a trust account in Pennsylvania over which Kingsley had control. Id. at Pages 38-43 Kingsley denied that the funds were put to private use. Id. at 87-88. He also testified that he had no knowledge of any impropriety by Estep regarding the use of trust funds and the ODC presented no evidence to the contrary.[3]
Following a hearing in April, 2007, the Board on the Unauthorized Practice of Law ("UPL Board") issued its findings of fact and recommendations for sanctions against Estep. The Board found that he had engaged in contemptuous conduct and recommended that he disgorge all fees. On August 15, 2007, the Supreme Court upheld the UPL Board's findings and added additional fines for each alleged violation totaling $17,000. Kingsley testified that he had terminated his relationship with Estep by September or October of 2007. Tr. at 68.

g. The goals of a disciplinary and the applicable standard:
The Delaware Supreme Court has set forth the goals of the disciplinary system and the applicable standard:
The objectives of the lawyer disciplinary system are to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct. To further these objectives and to promote consistency and predictability in the imposition of disciplinary sanctions, the Court looks to the ABA Standards for Imposing Lawyer Sanctions as a model for determining the appropriate discipline warranted under the circumstances of each case. The ABA framework consists of four key factors to be considered by the Court: (a) the ethical duty violated; (b) the lawyer's mental state; (c) the extent of the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors.
In Re Bailey, 821 A.2d 851, 866 (Del. 2003). The Delaware Supreme Court has also emphasized that the purpose of the rules is not to punish lawyers. In Re Reardon, 759 A. 2d 568, 575 (Del. 2000), citing In Re Benge, 754 A.2d 871, 879 (Del. 2000).

1. The Ethical Duty Violated
The Board finds that Respondent violated duties to the public, to clients, to the legal system and to the profession. He did so by preparing wills, trusts, deeds and other estate planning documents for citizens of Delaware, many of whom he never met, even though he was not licensed to practice in Delaware. The record reflects that he relied upon notes of an accountant, Estep, who interviewed clients and sent Respondent his notes. Kingsley was not aware that any Delaware lawyer met with the clients prior to his drafting of wills, trusts and other estate planning documents. Moreover, when he sent his drafts to Delaware attorneys for review prior to the clients' meeting with Mr. Estep for review and signature, there is no evidence that he sent the notes. Thus, no Delaware attorney was in a position to determine whether the documents he drafted appropriately reflected and carried out the wishes of the clients as reflected in Mr. Estep's notes. Further, the record reflects that following the consent by Estep on June 6, 2006 to a Cease and Desist Order with the ODC, Respondent and Kingsley arranged for a Delaware attorney also to be present with Estep for the clients to sign the documents, but the Delaware attorney played no meaningful role.
In finding that Kingsley's practice of preparing will, trust and other estate planning documents to be governed by Delaware law for Delaware residents constitutes the practice of law, we recognize that the Delaware Supreme Court has not definitively addressed exactly what conduct in this area constitutes the practice of law. The Estep Court noted that it was not required to speak to the issue because Estep had stipulated to certain conduct so the Court did not need "to promulgate a comprehensive definition." Id. at 8. Nonetheless, the Panel believes that the Delaware Supreme Court would find that a person drafting estate planning documents to meet the requirements of Delaware law for Delaware clients based on notes and recommendations from a non-lawyer and without any substantive review of the notes and interview of the clients by a Delaware attorney to ascertain their wishes would constitute the practice of law. See In re Devaney, 870 A.2d 53 (D.C. 2005) (sanctioning attorney licensed to practice in state who advised a testator re changes to her will and drafted codicils re same). See generally Jay M. Zitter, ID., Drafting of Will or Other Estate-Planning Activities as Illegal or Unauthorized Practice of Law, 25 ALR6th 323 at §§ 4 and 5 (2007) (collecting cases holding that preparation of wills or trusts constitute the practice of law).

2. Respondent's Mental State
The Panel finds that by preparing estate planning documents for Estep's clients prior to October 30, 2006 without proper supervision by a Delaware attorney, Respondent failed to heed a substantial risk that his practice would be deemed to constitute the unauthorized practice of law and/or the assistance of a non-lawyer in the unauthorized practice of law. A reasonable lawyer in his positiondrafting estate planning documents as a non-Delaware lawyer for Delaware clients where he knew the question of the propriety of such activity in Delaware was unsettled  would have taken greater steps to ensure that a Delaware attorney exercised appropriate supervision.
The ODC stipulated that as of June 6, 2006, "the Delaware Supreme Court has not addressed whether the drafting of will and trusts or probating of estates by a non-lawyer constitutes the unauthorized practice of law in Delaware." ODC-7 at 10. See also Tr. at 76-77. The ODC was hoping that eventually the Estep case would make its way to the Supreme Court so that it might issue a definitive ruling. Id. In that context, it appears that the practice of a non-Delaware lawyer drafting estate planning documents to be reviewed by a Delaware lawyer was similarly unsettled.
Following his conversation with counsel for the ODC, Respondent testified that he acted with Estep to change their practice to cure what he understood the ODC's objection to be by ensuring that a Delaware attorney not only reviewed all of his work but also was present at the signings of all documents to discuss the documents with the clients. While as the Delaware Supreme Court found, the mere presence of the Delaware attorney was insufficient, the ODC did not present clear and convincing evidence that Kingsley knew that the Delaware attorney performed so minimal a role at the closings. Stated differently, the Board finds an absence of clear and convincing evidence that Kingsley knew, as the Delaware Supreme Court later found, that the Delaware attorneys abdicated their ethical responsibilities by failing to play a meaningful role when they met with the clients prior to signing the documents drafted by Kingsley. Thus, there was insufficient documentary evidence or testimony from Kingsley or the Delaware attorneys or Estep that, following the conversation between Kingsley and the ODC, Kingsley was aware of the minimal role played by the Delaware lawyers in presenting the documents he drafted to the clients.
In similar circumstances the Delaware Supreme Court and other courts have rejected a finding of a knowing violation. See In Re Doughty, 832 A.2d 724, 734 (Del. 2003) (accepting Board's finding that Respondent, while out of compliance, did not knowingly violate a court rule); In Re Mekler, 669 A.2d 655, 666-67 (Del. 1995) (Respondent's genuine but erroneous belief that he had been granted a continuance supported finding that he did not knowingly violate a Court's scheduling order). See also In Re Mitchell and In Re Hilaire, 901 F.2d 1179, 1189 (3d Cir. 1990)(discharging rule to show cause regarding suspended lawyer and attorney who failed to supervise him because rules governing suspended attorneys were unclear, even though conduct failed to meet even the most lenient applicable standards).
Having said that, the Board notes that Kingsley's conduct at least after June 30, 2006 presents a close question of whether his conduct went beyond negligence to a knowing violation. Unlike in Counts VIII and IX below, in Counts 1-IV and VI the ODC did not allege that Kingsley knowingly acted in violation of a disciplinary rule. Accordingly, it was its burden at the sanctions hearing to establish by clear and convincing evidence that he acted knowingly. In that regard, the deemed admission that his activities in rendering legal advice were in violation of the disciplinary rules (Petition, ¶ 6) does not allege a state of mind. We note as well the absence of a written record as to what was communicated to Kingsley in his conversation with the ODC in June. Had he done nothing following that conversation, we might find differently. But he ceased working for Estep and he worked to change the practice to require the Delaware lawyers in a memorandum of understanding to be present prior to signing to ensure that the client's wishes were being carried out. On the record presented, we cannot conclude that the ODC has proven by clear and convincing evidence that Kingsley knew that the Delaware lawyers, as later found by the Delaware Supreme Court, would abdicate theft responsibilities. Thus, as to Counts I-IV and VI, the Board finds that the ODC has failed to prove by clear and convincing evidence that Respondent knowingly violated Rules 5.5(a) or 5.5(3)(1).[4]
As to Counts V and VII, the Board similarly finds that Kingsley acted negligently in using his home address to identify his law firm "Kingsley Law Firm, P.C." in a listing with the Philadelphia Estate Planning Council. The ODC introduced no evidence that any of the 75 clients for whom Kingsley had drafted estate planning documents had relied on Kingsley based on their having seen this or any other listing of his law firm with a Delaware address. Respondent testified that he never communicated with any of the clients identified in the Petition using a Delaware address. Id. at 48. Kingsley testified that the Philadelphia Estate Planning Council is not a marketing organization and that its website is for members only. Tr. at 47. He further testified that he listed the home address as the place where he preferred to receive mailings from the organization. Id. The record reflects that Kingsley's letterhead and business card make no mention of a Delaware address. Id. at 47-48. The Board finds that the evidence establishes that Kingsley negligently identified his law firm as having a Delaware address in violation of Rule 5.5(b)(2) without knowingly or consciously intending to market himself to the public as being a Delaware law firm.
Finally, the ODC's allegation that Kingsley knowingly violated the Cease and Desist Order as alleged in Counts VIII and DC has been deemed admitted. We do note that the Cease and Desist Order was not directed to Kingsley. The ODC acknowledged that it had no authority that an attorney could be found to have violated an order not directed at him. Tr. at 20-21. Its argument is that Kingsley knowingly facilitated Estep in disobeying an order of the tribunal by continuing to draft estate planning documents and not taking steps to stop Estep's conduct. Respondent's failure to ensure, following the entry of the Cease and Desist Order on October 30, 2006, that his arrangement with McCracken was working to provide active involvement by Delaware counsel reflects a conscious disregard for a known risk.
From the beginning of his association with Estep to the conduct of the disciplinary proceeding, Respondent has disregarded known risks. In undertaking his role initially, he researched the law and found no definitive case law that authorized his conduct. He sought no formal opinion from Delaware counsel. When the ODC contacted him directly and advised that he cease his employment with Estep because he was in violation of the Delaware Lawyers Rules of Professional Conduct, Respondent called and then cancelled an appointment with Delaware counsel. He then resigned from Estep's employ and negotiated a memorandum of understanding with Delaware counsel, first Bialecki and then McCracken, to be present when the clients signed the documents so that it would not be Estep alone who presented the documents Respondent drafted to the clients. Again, he sought no opinion from Delaware counsel that the new arrangement would comply with Delaware law and the record reflects no effort by Respondent to ascertain whether the Delaware lawyers were in fact acting to "ensure that all the documents complied with what the client wanted done in terms of testamentary provisions." ODC-3 at 251.When served with the Petition in this action, Respondent chose not to answer in a timely manner or to retain Delaware counsel. As a consequence, the ODC's allegations that he knowingly disobeyed a Supreme Court Order in violation of Rule 3.4 (c) are deemed admitted. See Petition at ¶¶ 27 and 29; In re Fountain, 913 A.2d at 1181. Due to the unsettled nature of Delaware law and the failure of proof by clear and convincing evidence that Kingsley knowingly assisted in the unauthorized practice of law prior to October 30, 2006, the Panel finds that his violations reflected negligence. But his deemed admission that he knowingly violated a Supreme Court Order after October 30, 2006 requires the Panel to conclude that his violations after October 30, 2006 were knowing.

3. The Extent of the Actual or Potential Injury to the Clients Caused by the Lawyer's Misconduct
The ODC contends that Kingsley's actions caused actual injury and serious potential injury to the clients for which he drafted estate planning documents. Its first contention is that for at least 50 of the clients, Kingsley inserted Estep or entities he controlled as executors of his client's estates or as trustee of trusts. At the sanctions hearing, the testimony was that a convicted felon cannot serve as a personal representative and that Kingsley did not name him as a personal representative after learning about the felony conviction. Tr. at 52-56. Nonetheless, Kingsley acknowledged that he took no steps upon learning of Kingsley's status to bring that problem to the attention of the clients. Id. at 55. He testified that at that point he did not have access to the whole database. Id. at 55-56. The Panel finds that minimally Respondent should have advised Estep to notify all clients for whom he was acting as personal representative that they would need to have a new person appointed and that his failure to do so delayed the time that remedial steps could be taken.
The ODC also contends that Estep's clients were harmed because several of their documents were improperly executed under Delaware law. ODC-1 at Paragraph 11. While true, the Panel finds that that harm is not fairly attributable to Kingsley who gave no advice regarding the proper procedures in Delaware for execution of a will.
The more serious harm is that by engaging in the unauthorized practice of law Kingsely named Estep and his firm as the trustee of trusts to which the clients transferred property, including their homes. The record reflects that the clients did not understand or necessarily seek this work. Due to the lack of a Delaware lawyer's meeting with the clients to understand their wishes and confirm that the documents drafted were appropriate to implement their intent, this occurred at least in the case of William and Yolanda Welsh, necessitating the hiring of a Delaware attorney to re-draft their estate planning documents.

4. Sanction
The ODC seeks a sanction of disbarment. The Panel inquired as to how an attorney who is not a member of the Delaware bar can be disbarred. The ODC advised that a Delaware lawyer not barred in Delaware can be disbarred so as to preclude their taking the Delaware bar for five years and also from appearing pro hac vice or under Rule 5.5 which allows an attorney not admitted in Delaware to practice on a temporary basis. Tr. at 14-15.
The most analogous case is In re Tomve, 929 A.2d 774 (Del. 2007). There a non-Delaware attorney consented to the entry of a cease and desist order approved in 1991 by the Delaware Supreme Court. That Order directed that Tonwe "shall immediately cease and desist from the performance of any and all legal services in Delaware for a fee, or for no fee, including, without limitation, the offering and providing of assistance in legal matters, until such time as she is properly admitted to practice as a member of the bar of the State of Delaware ....". Id. at 3. Ms. Glover was also convicted in 1991 of bribing a federal immigration official and served 37 months in prison. She was disbarred in Ohio and Pennsylvania. In 2002, she was reinstated in Pennsylvania. From 2003-2005, she had a substantial practice in Delaware of over 100 clients, advising them on matters of personal injury that occurred in Delaware. The Board's findings of misconduct are set forth below:
In light of the factual record, the Board finds Respondent engaged in the practice of law within the State of Delaware. Between July 1, 2003 and June, 2005, Respondent established a continuing lawyer-client relationship with approximately 100 Delaware citizens. Respondent provided legal services through the negotiation and settlement of her clients' insurance claims, all of which involved Delaware motor vehicle accidents and Delaware auto insurance policies, which more likely than not mandated the application of Delaware insurance law to claims arising under the policy.
* * *
In representing dozens of Delaware clients, on a continuing basis since July 1, 2003, the Respondent established a systematic and continuous presence in Delaware for the practice of law in violation of [Delaware Lawyers' Rule of Professional Conduct] Rule 5.5 (b)(1). She regularly counseled clients on matters of Delaware law and negotiated settlements with insurance companies regarding Delaware auto insurance policies. Furthermore, the representation of Delaware clients comprised a substantial portion of her caseload and generated consequential attorney's fees.
* * *
... Respondent agreed in a 1991 Statement and Order of Voluntary Compliance to cease and desist from the performance of any and all legal services, including the offering or providing of assistance in legal matters, in Delaware until she is properly admitted to practice as a member of the Delaware bar .... It is undisputed that since that time Respondent has provided legal services to multiple Delaware citizens on a recurring basis, including conducting a deposition for a matter pending before the Delaware Superior Court, and representing a client at an arbitration hearing within the State of Delaware.
* * *
... The Board specifically concludes that the Respondent's violation of Rules 5.5(b)(1) and 3.4(c) have been proved by clear and convincing evidence.
Id at 9-10.
The Panel finds that the misconduct sanctioned in Tonwe is similar to the misconduct here, Most significantly, she knowingly violated a prior order to cease and desist entered against her. Here the allegation that Kingsley did the same here or at least knowingly assisting Estep in violating a Cease and Desist Order directed to him has been deemed admitted.
The ABA Standards for Imposing Lawyer Sanctions recommend that, absent aggravating or mitigating circumstances, the appropriate sanction for the unauthorized practice of law where a lawyer negligently engages in conduct that is a violation of a duty owed as a professional which causes injury to a client, the public or the legal system is a reprimand. ABA Standards for Imposing Lawyer Discipline 7,3 at 388 (2006 Ed.). These same standards provide that "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public or the legal system." Id. at 7.2. Finally, "disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system." Id. at 7.1 The ABA Standards also permit the disciplinary board to impose other sanctions as may be appropriate.
Here we find that Kingsley acted negligently regarding Counts I-VII. Further, we find that the claims in Counts VIII and IX that Kingsley knowingly assisted another in violation of a Court order are deemed admitted. Taking in to account the professional misconduct here, the Board recommends that the appropriate sanction is that:
1) Respondent be disbarred and prohibited from providing advice to any Delaware clients on matters of Delaware law, including without limitation drafting wills, powers of attorney, deeds of trust and other estate planning documents for Delaware clients under Delaware law, until such time as the Respondent shall have passed the Delaware bar exam and been admitted to practice in Delaware;
2) Respondent be prohibited from acting pro hac vice on any matter in Delaware for a period of five years;
3) Respondent shall be prohibited for five years from engaging in the temporary practice of law pursuant Delaware Supreme Court Rules 55 or 55.1;
4) After five years from the date of disbarment, Kingsley may apply for admission to the Delaware Bar but shall bear the burden of proving by clear and convincing evidence that he has successfully completed the bar exam and that he is fit to practice law;
5) Within five business days of receipt of this order request in writing that the Philadelphia Estate Planning Council no longer list his law firm address in Delaware and refrain in all respects from identifying his law firm address as being in Delaware;
6) The contents of this report be made public; and
7) Respondent shall pay the costs of these proceedings.

5. Aggravating or Mitigating Factors
Once a preliminary sanction is recommended, the ABA Standards and the Delaware Supreme Court require the panel to examine whether any aggravating or mitigating factors counsel a greater or lesser sentence. In Re Steiner, 817 A.2d 793, 796 (Del. 2003) Here, the Panel finds the following aggravating factors: dishonest or selfish motive, and a pattern of misconduct with multiple offenses. In mitigation, the Board notes the Respondent's inexperience in the practice of law and the absence of a prior disciplinary record. The Panel does not believe that these factors require a modification of the recommended sanction.
NOTES
[1] Because it appeared that Estep violated the Order, the ODC brought contempt charges. The Board on the Unauthorized Practice of Law held a hearing and found Estep in contempt. This Court affirmed those findings. See In re Estep, 933 A.2d 763 (Del. 2007) (per curiam).
[2] Respondent ceased meeting with Estep and any of the clients for the initial interview and understood that Estep would arrange for a Delaware attorney to be present when the clients came in to meet with Estep to sign the documents. Using this process, Respondent prepared legal documents for approximately twenty individuals and couples and forwarded the documents to Estep for presentation to the Delaware clients by Estep in the presence of Delaware counsel.
[3] The Board noted that Respondent acknowledged this was a failing on his part but did not notify any clients because "he lacked access to the whole database as he was no longer an employee but merely outside counsel."
[4] The Board found that "[t]he record reflects that the clients did not understand or necessarily seek this work. Due to the lack of a Delaware lawyer's meeting with the clients to understand their wishes and confirm that the documents drafted were appropriate to implement their intent, this occurred at least in the case of [one client], necessitating the hiring of a Delaware attorney to re-draft their estate planning documents."
[5] In support of this conclusion, the Board relied on In re Tonwe, 929 A.2d 774 (Del. 2007). The Board noted that in that case "she knowingly violated a prior order to cease and desist entered against her," which was similar to this case where "the allegation that [Respondent] did the same... or at least knowingly assisting Estep in violating a Cease and Desist Order directed to him has been deemed admitted."
[6] Respondent admits his willingness "to enter into a voluntary five year, ten year, or even permanent, agreement not to seek admission to the Delaware bar and not to seek admission pro hac vice or practice even temporarily in Delaware for five years, ten years, or permanently, as the [ODC] sees fit."
[7] In re Shamers, 873 A.2d 1089, 1096 (Del. 2005); In re Fountain, 878 A.2d 1167, 1173 (Del. 2005).
[8] See Towne, 929 A.2d at 778.
[9] See Delaware Lawyers' Rules of Professional Conduct Rule 8.5.
[10] Fountain, 878 A.2d at 1173.
[11] Towne, 929 A.2d at 781 (quoting ABA Standard 8.1 Commentary) (internal quotation marks and citation omitted).
[12] 929 A.2d 774 (Del. 2007).
[13] Id. at 781 (internal citation omitted).
[14] Delaware Lawyers' Rules of Professional Conduct Rule 5.5(c) provides:

A lawyer admitted in another United States jurisdiction or in a foreign jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that: (1) are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter; (2) are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized; (3) are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires pro hac vice admission; or (4) are not within paragraphs (c)(2) or (c)(3) and arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice.
[15] Rule 5.5(d) provides:

A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services in this jurisdiction that: (1) are provided to the lawyer's employer or its organizational affiliates and are not services for which the forum requires pro hac vice admission; or (2) are services that the lawyer is authorized to provide by federal law or other law of this jurisdiction.
[16] Delaware Lawyers' Rules of Professional Conduct Rule 5.5(b); Rule 5.5 cmt. 4.
[17] Id. at Rule 5.5(6)(2); Rule 5.5 cmt. 4.
[18] In Estep, we noted that this arrangement "constitute[d] a transparent, nefarious attempt to circumvent the Cease and Desist Order and continue with '`business as usual." In re Estep, 933 A.2d 763, 771 (Del. 2007). We also noted that as part of this practice, Kingsley claimed to "help [Estep] with his legal problems, including counseling [Estep] in terms of how to `limit the scope of inquiries from various branches of the Delaware government.'" Id. at 768.
[19] ABA Standards for Imposing Lawyer Discipline 7.2 at 24 (2005), available at http://www.abanetorglcperegulationistandards_sanctions.pdf.
[20] Id. at 7.1.
[21] Tonwe, 929 A.2d at 781 (quotation omitted).
[22] The ODC's limited objections to the practice limitations recommended by the Board to accompany disbarment are sustained. The ODC's objection to the characterization of the colloquy between counsel for the ODC and the Board during the legal argument portion of the hearing as "testimony" is also sustained.
[1] Prior to the sanctions hearing, Respondent requested and the Chair granted permission to make a submission providing background concerning the evidence for the sanctions hearing. On December 14, 2007 Respondent submitted a "Memorandum to Clarify Items from the Petition for Discipline and Items Addressed in ODC's Letter to the Board Dated September 24, 2007 to Determine Appropriate Sanctions" ("Motion to Clarify"). On December 17, 2007, the ODC objected to the Motion to Clarify to the extent it contains factual assertions contrary to the deemed admitted allegations. The Board stands by its finding that Respondent has admitted the allegations of the Complaint.
[2] Kingsley testified that along with Estep he met with 10-20 of the clients directly in Estep's office during this time period and took his own notes "to see if [Estep] was properly, to make sure that his notes accurately reflected what I felt was the testimony as given forth by the clients." . ODC-3 at 247-248.
[3] The ODC did not claim that any of Kingsley's conduct post-November, 2006 violated any rule and thus presented no evidence regarding Kingsley's improper use of trust funds. Counsel stated this was not relevant to what the ODC intended to present to the Panel. Tr, at 80. The issue arose in the sanctions hearing in the context of responses to questions from the Panel regarding whether Kingsley had cooperated with the Receiver.
[4] The Board notes that ODC-5, a letter from Estep to Justice of the Peace Court #I2 dated May 8, 2007 does not support the allegation that Kingsley gave advice about Delaware law in a Delaware proceeding. In the letter Estep requests that a certified copy of a transcript of proceedings in Duman v. Eslep, JP12-07-002919 be sent to Kingsley as Estep's agent to receive the transcript. The ODC acknowledged that it had no evidence that Kingsley participated as an attorney in the proceedings. Tr. at 16-17. Kingsley testified that he appeared as a witness at the hearing and did not draft the letter. Id. at 59.